Judge Rosemary Ledet
The State of Louisiana seeks review of the district court’s November 4, 2016 ruling denying the State’s procedural objections to the post-conviction application filed by the defendant, Herbert Everett. In his application for post-conviction relief, Mr. Everett contended that the State violated Brady v. Maryland, 373 U.S. 83, 84, 83 S.Ct. 1194, 1195, 10 L.Ed.2d 215 (1963), by failing to disclose evidence of a deal it made with Riley Sanders, an eyewitness that testified for the prosecution during Mr. Everett’s trial. For the reasons that follow, we grant the State’s writ and reverse the district court’s ruling.
STATEMENT OF THE FACTS AND THE CASE
On September 20, 2007, Mr. Everett and his co-defendant, Tyrone Crump, (“the Defendants”) were indicted for the first degree murder of Arthur Jackson, in violation of La. R.S. 14:43. On October 3 and October 5, 2007, the Defendants pled not guilty. On March 31, 2009, the State amended the charge to second degree murder.
|2On September 14, 2009, a jury trial commenced. On September 18, 2009, the jury found the Defendants guilty as charged.[1] Thereafter, the Defendants filed *422 motions for new trial. In conjunction with his motion for new trial, Mr. Everett filed a request for production of all correspondence between the New Orleans District Attorney’s Office and the United States Attorney’s Office regarding Mr. Sanders. The State subsequently produced a letter, dated December 8, 2009 from Assistant District Attorney, Kevin Guillory, to Assistant United States District Attorney, Maurice Landrieu. In the letter, Mr. Guillory explained that “Mr. Sanders’ cooperation was instrumental to the successful prosecution of Tyrone Crump and Herbert Everett.” [2] Mr. Guillory further noted as follows:
Mr. Sanders is truly a hero in the eyes of the District Attorney’s office and the citizens of New Orleans. He put himself in harm’s way and has jeopardized his own safety to come forward and tell the truth. For that, I am asking that Riley Sanders be given Rule 35 consideration for his efforts, and that he receive a reduction in his remaining sentence.
On September 21, 2010, Mr. Everett filed a motion for post-verdict judgment of acquittal and attached Mr. Guillory’s letter. Following a hearing, the district court denied the motions for new trial. On October 5, 2010, the Defendants were sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. The Defendants appealed.
IsOn appeal to this court, Mr. Everett raised several assignments of error. See Everett, supra. In one of his assignments of error, he contended that a new trial was necessary because of the State’s violation of Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (providing that a new trial is warranted if the statements at issue are shown to be actually false; the prosecution knew they were false; and the statements were material). Mr. Everett contended that the State knowingly suborned perjury from Mr. Sanders.[3] This court found that the State established the Defendants’ identities as perpetrators of the shooting[4] and presented sufficient evidence to convict the Defendants of second degree murder. Accordingly, this court affirmed the Defendants’ convictions.
On April 23, 2014, Mr. Everett filed a pro se application for post-conviction relief alleging ineffective assistance of counsel. On August 20, 2015, the district court ordered the State to file any procedural objections or a response to the merits within thirty days. On October 23, 2015, after being granted an extension, the State filed its response.
|4On April 25, 2016, counsel enrolled for Mr. Everett and filed a supplemental memorandum in support of his application for post-conviction relief. Mr. Everett contended that the State failed to disclose exculpatory evidence of a deal the State entered with Mr. Sanders in violation of *423 Brady.[5] On October 14, 2016, the State filed procedural objections to the supplemental post-conviction application. The State contended that Mr. Everett’s Brady claim regarding Mr. Sanders’ deal was barred by La. C.Cr.P. art. 930.4.[6]
On November 4, 2016, following a hearing, the district court denied the State’s procedural objections as to the Brady claim.[7] From that ruling, the State filed the instant writ application.
DISCUSSION
The State contends that the district court erred in allowing Mr. Everett to litigate the claims regarding Mr. Sanders’ perjury and his deal with the State for a third time. The State argues that Mr. Everett first claimed in his motion for new [¡¿rial that the State withheld the terms of the deal with Mr. Sanders, and it submitted Mr. Guillory’s letter as evidence thereof as a violation of Napue, supra. The State contends that although Mr. Everett subsequently raises the claim under Brady, the alleged prosecutorial misconduct was previously before the district court and this court on appeal. The State, therefore, contends that allowing Mr. Everett to raise this claim again allows him to circumvent La. C.Cr.P. art. 930.4.[8]
As noted above, the letter from Mr. Guillory and the alleged deal with Mr. Sanders were raised in Mr. Everett’s post-trial proceedings before the district court and on appeal before this court. In his motion for new trial, Mr. Everett claimed that the prosecution induced Mr. Sanders’ perjured testimony and failed to correct it.[9] In his motion for post-verdict judgment *424 of acquittal, Mr. Everett raised similar ^arguments[10] and attached the December 2009 letter from Mr. Guillory outlining Mr. Sanders’ cooperation in the trial.
On appeal to this court, Mr. Everett argued that the reliability of Nekeia’s and Mr. Sanders’ testimony was undermined by the potential leniency that Mr. Sanders would receive in exchange for his testimony. He specifically contended that the testimony of Mr. Sanders and Nekeia was “biased and perjured” and negated the identification of the Defendants as the perpetrators. Mr. Everett further argued that the district court erred in denying his motion for new trial because the State minimized its role in the deal made with Mr. Sanders and Nekeia, which was revealed after trial through the letter from Mr. Guillory.
This court, however, found that the State presented sufficient evidence to establish that the Defendants were the perpetrators of the shooting.[11] This court reasoned as follows:
*425 17[T]he defense argues that the state “knowingly” suborned perjury from eyewitness Sanders. According to the defense, Sanders perjured himself at trial when he said he had not given the defendant’s name to the DEA. The defense maintains that a memorandum produced by the state contradicted Sanders’ testimony, but the trial court refused to admit the memorandum into evidence. The defense claims the trial court’s action denied it the right to impeach Sanders with the memorandum. In support of his argument, the defendant cites Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1969) for the proposition that where a prosecutor allows a state witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness’s testimony reasonably could have affected the jury’s verdict, even if the testimony goes only to the credibility of the witness. Id., 360 U.S. at 269, 79 S.Ct. 1173.
⅜ ⅜ ⅜
Sanders did not perjure himself. He testified that he told federal agents “everything he knew” about this incident. He was not asked | ¿whether he told DEA agents defendant Crump’s name. Further, the defense has failed to produce a copy of the statement it contends proves that Sanders committed perjury. However, even if Sanders did tell DEA agents Crump’s name, the exclusion of the statement did not prejudice the defendant because the evidence was not exculpatory. We find no proof of state misconduct or that Crump suffered any prejudice in this instance. The statement was not material. The only “evidence” is the defendant’s unsupported allegation that the state’s witness may have testified incorrectly about a collateral matter. The mere fact that Sanders testified differently on two occasions does not prove that he testified falsely.
Such conflicting testimony indicates that he may have recalled details more clearly shortly after the shooting than he did at the time of trial, some two and one-half years later. Furthermore, it cannot be presumed that a prosecutor has knowledge that a witness’ answer is false simply because the witness may have testified somewhat differently on a prior occasion. The failure to disclose the pre-trial statement did not amount to suppression of evidence favorable to the defense, such that it would constitute a violation of due process. See Na-pue, supra.
Everett, 11-0714 at pp. 46-47, 96 So.3d at 636.
Accordingly, this court considered that Mr. Sanders “hoped to receive favorable consideration of his request for sentence reduction” in exchange for his cooperation with the State. Nonetheless, this court concluded there was sufficient evidence to support the Defendants’ convictions. This court reasoned that there was sufficient evidence to establish the Defendants’ identities as the perpetrators and that the jury’s acceptance of Mr. Sanders’ testimony was rational despite his motive for obtaining a lesser sentence. Furthermore, Mr. Sanders admitted in front of the jury that he hoped to receive leniency in exchange for his testimony. See Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (to show a Brady violation, “[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a | ^verdict worthy of confidence”). Given this court, on the prior appeal, previously considered both the 2009 letter from Mr. Guillory and Mr. Everett’s arguments regarding the State’s alleged deal with Mr. Sanders, we find Mr. *426 Everett’s Brady claim both repetitive and procedurally barred under La. C.Cr.P. art. 930.4(A) & (C),[12] See State v. Biagas, 99-2652, pp. 8-9 (La.App. 4 Cir. 2/16/00), 754 So.2d 1111, 1116 (finding that the defendant’s post-conviction claims were repetitive to those raised in a prior petition and thus had no merit).
DECREE
For the foregoing reasons, the State’s writ is granted and the district court’s ruling denying the State’s procedural objections is reversed.
WRIT GRANTED

. This court explained the facts underlying the Defendants' convictions in State v. Everett, 11-0714, pp. 2-13 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 613-18.

. At the time Mr. Sanders testified, he was serving a twenty-year sentence in federal prison for federal distribution of cocaine.

. This court summarized Mr. Everett’s argument as follows:
According to the defense, Sanders perjured himself at trial when he said he had not given the defendant's name to the DEA. The defense maintains that a memorandum produced by the state contradicted Sanders’ testimony, but the trial court refused to admit the memorandum into evidence. The defense claims the trial court’s action denied it the right to impeach Sanders with the memorandum.
Everett, 11-0714 at pp. 45-46, 96 So.3d at 635-36.

.This court noted that five witnesses—including Mr. Sanders and his wife, Nekeia Sanders—identified Mr. Crump as one of the shooters; four witnesses, including Nekeia, identified Mr. Everett as the other shooter.

. Mr. Everett also raised additional ineffective assistance of counsel claims based on the following failures of his trial attorney: to investigate and identify four eyewitnesses prior to trial; to meet with Mr. Everett prior to trial; and to subpoena recorded jail phone calls that would have impeached Mr. Sanders’ testimony. The State did not file any procedural objections to the ineffective assistance of counsel claims.

. The State does not challenge the timeliness of the post-conviction application notwithstanding that Mr. Everett supplemented the application following the expiration of the prescriptive period. See State ex rel. Foy v. Whitley, 92-1281 (La. 10/6/95), 661 So.2d 455 (Mem) (“The district court is ordered to exercise its discretion and determine whether the interests of justice require that relator be allowed to amend and supplement his timely filed application for post conviction relief. La. C.Cr.P. art. 930.8 does not take away from district judges the discretion to allow amendment and supplementation of timely filed pleadings.”).

. At the hearing, the State conceded that Mr. Everett's ineffective assistance of counsel claims were cognizable. The State, however, argued that the claims should be dismissed pursuant to La. C.Cr.P. art. 929. The district court, however, declined to rule on the ineffective assistance of counsel claims pending this court’s decision in this matter.

. La. C.Cr.P. art. 930.4 provides, in pertinent part, as follows:
A. Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.
B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief.
C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court shall deny relief.

. Mr. Everett alleged in his motion for new trial the following:
1) It is incontrovertible that Mr. Riley Sanders gave Mr. [Everett’s] name to the Federal Law Enforcement Agents that interviewed him, the State produced a DEA memorandum, that contained, the interview notes that clearly indicated such.
2) At trial, Mr. Sanders testified that he had never given Mr. [Everett’s] name to *424 anyone and never indicated he saw Mr. [Everett] at the time of location of the homicide.
3) Rather than follow the dictates of the law and force Mr. Sanders to admit, he had just testified falsely the district attorney’s office moved the trial court to prohibit counsel for Mr. Everett from utilizing the DEA Memorandum and impeaching Mr. Sanders.
4) The District Attorney’s Office thus compounded their misconduct and allowed demonstrably false information to be placed into evidence without correction. Additionally, the District Attorney continued to conduct direct examination as if this incident of peijuiy had not occurred.
5) This ultimate miscarriage of justice was exploited in closing arguments, when the District Attorney argued that Riley Sanders was "credible.” All the while, knowing it had hidden from the jury his perjury.

. He stated in his motion the following:
In light, [sic] of die evidence adduced within the Motion Hearings and Trial of this Murder case no rational trier of fact who seriously honored the responsibility to make rational credibility determinations, coupled with the complete lack of physical evidence and the principals [sic] of Napu[e\, regarding the subornation of perjury, could can [sic] return anything other than an Acquittal for Herbert Everett.

. Regarding the identification of the Defendants, this court reasoned as follows:
At trial, Nekeia identified both defendants as the men who shot the victim. Sanders identified only Crump. The defendants argue these in-court identifications are unreliable, biased, untrustworthy, and should not be accorded any weight.
The defendants emphasize that Sanders initially denied being a witness to the shooting when he was interviewed by police at the scene. Also, they note that Sanders came forward with his identification only after he was arrested on a state marijuana charge and had forfeited his federal bond. Continuing, the defendants argue that Sanders and Nekeia lied when they identified the defendants, and that they did so solely for the purpose of obtaining a reduction of Sanders’ twenty-year federal sentence.
Sanders candidly admitted he lied to the police when he said he did not witness the shooting. He also admitted that in exchange for his cooperation with the state, he hoped to receive favorable consideration of his request for sentence reduction.
[[Image here]]
It is not the function of the appellate court to reassess the credibility of witnesses or to reweigh the evidence; the reviewing court's function is to determine the constitutional sufficiency of the evidence presented. State v. Barthelemy, 09-0391, p. 25 (La.App. 4 Cir. 2/24/10), 32 So.3d 999, 1015, writ den., 10-0706 (La. 10/29/10), 48 So.3d 1097.
The defense’s claim of bias and perjury with respect to Nekeia’s and Sanders' identifications of the defendants as the shooters was considered by the jury. After examining all of the evidence and weighing the credibility of the witnesses, the jury chose to credit their testimony. We do not assess credibility or reweigh the evidence. Id. at p. 25, 32 So.3d at 1015.
Everett, 11-0714 atpp. 22-23, 96 So.3d at 623 (footnote omitted).

. As noted above, the district court has not ruled on Mr. Everett’s ineffective assistance of counsel claims, and those remaining claims, therefore, are not affected by this decision.